UNITED STATES DISTRICT COURT
for the
SOUTHERN DISTRICT OF NEW YORK

JEANINE P. COHEN,
    Plaintiff,    Case No. 7:22 –cv-07182 (VB)

v.

WESTLAKE FLOORING    January 6, 2023
SERVICES, INC., *et al.*,
    Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO DISMISS OR STAY ACTION AND TO COMPEL ARBITRATION

### I. PRELIMINARY STATEMENT

Plaintiff Jeanine P. Cohen alleges six causes of action against defendants Westlake Flooring Services, Inc., Westlake Services, LLC d/b/a Westlake Financial, Westlake Flooring Company LLC, and The Hankey Group (collectively "Westlake").[1] Every cause of action advances claims arising out of her employment with Westlake. Plaintiff entered an arbitration agreement at the commencement of her employment with Westlake that requires all disputes arising out of her employment to be resolved through binding arbitration. As a result, this matter should be dismissed or stayed and Plaintiff should be compelled to submit her claims to arbitration.

---

[1] Plaintiff contends that each of these entities constituted a "joint employer" and/or "single enterprise" employer of Ms. Cohen. Complaint at paras. 2-3. Plaintiff also names Jonathan Zhan, SVP of Westlake Flooring Company, LLC, Jennifer Fiore, Director of Sales & Field Operations at Westlake Flooring Company, LLC, Megan Feldmeth, Human Resources Director for Westlake Financial Services, and John Does 1 through 10 (hereinafter "Individual Defendants"), each in both "their individual and corporate capacities." Complaint paras. 10-16.

## II.     FACTUAL BACKGROUND

### A. Allegations In The Complaint[2]

Westlake hired Ms. Cohen on or about May 4, 2015 to serve as Area Manager, Sales for the Northeast Region.[3] Her starting annual salary was $60,000.00, with a guaranteed bonus of $2,000.00 per month for the first three (3) months of her employment. Complaint at para. 22. In or about 2017, Plaintiff was promoted to a Senior Area Manager. Complaint at para. 24. In or about January 2020, Westlake promoted Ms. Cohen from Senior Area Manager to Regional Manager, Northeast Region. Complaint at para. 25. At all times relevant to this matter, Plaintiff reported directly to FIORE, who, in turn, reported to ZHAN. Complaint at para. 35.

At all relevant times, Ms. Cohen had the requisite education and/or experience to serve as a Westlake Regional Manager (including, but not limited to): (a) having a minimum of five (5) years sales management experience; (b) having more than the required energy, motivation, and excellent verbal and written communication skills; and (c) being knowledgeable of Microsoft Office, Excel, PowerPoint and various sales software. Complaint at para. 38. Plaintiff had the same, substantially the same, or more years of work experience as a Regional Manager at Westlake in comparison to her male Regional Manager counterparts. Complaint at para. 33. Plaintiff also had the same, substantially the same and/or better qualifications, in terms of education and training, to serve as a Regional Manager at Westlake in contrast to her male Regional Manager counterparts. Complaint at para. 34.

At all relevant times, both Ms. Cohen and her male Regional Manager counterparts were responsible for a full range of professional duties for Westlake. Complaint at para. 36. At all

---

[2] While Defendants reserve the right to contest the veracity of any and all of Plaintiff's allegations, they concede that they may be considered accurate for purposes of this motion only.
[3] Notably, Plaintiff signed the EEDRA that is the basis of this motion on that same day – May, 4, 2015. EEDRA attached hereto as Exhibit 2.

relevant times, Plaintiff and her male Regional Manager counterparts performed the same, and/or substantially the same job duties and functions at Westlake, which included but were not limited to: (a) Coaching, leading and developing Area Managers; (b) Responsible for managing persons in outside sales within the assigned region; (c) assisting with hiring and training new Area Managers; (d) presenting and selling company products and services to current and potential clients; (e) preparing action plans and schedules to identify specific targets and to project the number of contacts to be made; (f) identifying sales prospects and contact these and other accounts as assigned; (g) developing and maintaining sales materials and current product knowledge; (h) establishing and maintaining current client and potential client relationships; (i) managing Area Managers through quality checks and other types of follow-up; (j) identifying and resolving client concerns; (k) preparing a variety of status reports, including activity, closings, follow up, and adherence to goals; (l) communicating new product and service opportunities, special developments, information, or feedback gathered through field activity to appropriate Westlake staff; (m) participating in marketing events such as seminars, trade shows, and telemarketing events; (n) traveling required throughout the assigned territory; and (o) other duties as assigned. Complaint at para. 37.

      As evidence of the disparate treatment to which Plaintiff was subjected due to her being a female, Ms. Cohen had the same or substantially the same or greater workload in comparison to her male Regional Manager counterparts. Complaint at para. 39. Also, Ms. Cohen ranked higher than most of the male Regional Manager counterparts on the "Regional Ranking Report" for most of 2020. Complaint at para. 40. Also, on several occasions, FIORE stated, in sum and substance, that it is better that women "have a husband" on whom they can rely financially,

which is a stereotype with regard to female versus male roles in the workplace. Complaint at para. 42

In or about December 2020, the Individual Defendants began the process of setting up a "realignment" of the regional areas. This process was discriminatory in so far as Plaintiff's ability to earn the same or more pay in comparison to all the male Regional Managers, and also had a discriminatory impact on Plaintiff, the only female Regional Manager. Complaint at para. 27.

Unlike the more favorable treatment of male Regional Managers, the Individual Defendants allowed closed accounts from male Regional Managers regions to be moved to and counted in Ms. Cohen's portfolio/region, which negatively affected Ms. Cohen's pay. Complaint at para. 28-29. The Individual Defendants also gave male Regional Managers larger territories than that given to Ms. Cohen, which resulted in her getting less pay than her male counterparts. Complaint at para. 30. In the summer of 2019, the Individual Defendants gave most or all of the male Regional Managers larger territories than the territories left to Ms. Cohen, whose territory was actually cut by twenty-five percent (25%), which resulted in her getting less pay than her male counterparts. Complaint at para. 31. Defendants FIORE and ZHAN also allowed another Regional Manager to keep accounts in Plaintiff's territory that were active, but once he closed them they were moved under Plaintiff's name, which inflated his numbers resulting in him getting greater pay. Complaint at para. 32. Plaintiff complained about these practices to FIORE and ZHAN in the Summer of 2019 and on December 31, 2020.

After Ms. Cohen complained about the negative impact the Individual Defendants' "re-alignment" was and/or would lead to a lesser opportunity to maximize her pay in comparison to her male Regional Manager counterparts, Defendants terminated Plaintiff's employment at

Westlake on January 26, 2021. Complaint at para. 43. The reasons given by the Individual Defendants for Ms. Cohen's termination are false and mere pretext for gender discrimination, and retaliation for Ms. Cohen's complaints regarding the disparity in compensation between her (the only female) and her male Regional Manager counterparts. Complaint at para. 44.

Based on the foregoing allegations, Plaintiff claims Defendants violated the federal Equal Pay Act and its New York equivalents, subjected Plaintiff to gender based disparate treatment in violation of Title VII and its New York equivalents, and retaliated against Plaintiff in violation of Title VII, the Equal Pay Act, and their New York equivalents. Complaint at paras. 49, 51, 53, 55, 57, and 59.

### B. Additional Facts

At the commencement of her employment, Plaintiff signed a variety of on-boarding documents, including but not limited to a Phone and Internet Monitoring agreement, a Meal Rest Break and Time Card Policy agreement, an Employee Confidentiality Agreement, an Information Access Security Agreement, and a Notice to Employee addressing wages, Workers' Compensation, and paid sick leave. See Affidavit of Megan Feldmeth and copy of New Hire Check List, Phone and Internet Monitoring agreement, Meal Rest Break and Time Card Policy agreement, Employee Confidentiality Agreement, Information Access Security Agreement, and Notice to Employee at Exhibit 1. Also in conjunction with commencing her employment with Westlake, Plaintiff entered into an "Employer – Employee Dispute Resolution Agreement" (hereinafter "EEDRA"), which is a standard requirement for all persons in the positions held by her during her tenure with Westlake. See Affidavit of Megan Feldmeth and copy of EEDRA at Exhibit 2. The signatures on all of the documents signed by Plaintiff are notably similar.

Critical here, the EEDRA states, *inter alia*, that:

5

> Employee hereby agrees to submit to binding arbitration before a neutral arbitrator all disputes and claims out of my submission of my employment application or any and all disputes that may arise out of or already exist related to my employment application or any and all disputes that may arise out of or already exist related to my employment or relationship with Employer, whether during or after that employment, including, but not limited to claims for wages or other compensation due; claims for breach of any contract or covenant, express or implied; tort claims; claims for discrimination, including discrimination based on race, sex, religion, national origin, age, marital status, sexual orientation, handicap, disability, or medical condition; claims for benefits, except as excluded in the following paragraph; and claims for violation of any federal, state or other governmental constitution, statute, ordinance or regulation. … I understand that this Agreement to Arbitrate applies to claims that pre-exist or may pre-exist the date of this Agreement. The claim will be submitted to binding arbitration before a neutral arbitrator. I understand that I am waiving my right to a jury trial …"

Id. That agreement was in effect throughout her employment with Westlake and clearly applies to the employment discrimination and retaliation claims at issue in her Complaint currently before this Court. In view of well settled authority, this matter must be dismissed or stayed and the Plaintiff compelled to arbitrate her claims pursuant to the agreement.

### C.     Relevant Procedural Background

In advance of filing the instant suit, Plaintiff filed a charge of discrimination with the EEOC on April 12, 2021, alleging gender discrimination and retaliation. See Charge of Discrimination attached hereto as Exhibit 3. The EEOC issued a "Notice of Right to Sue (*Issued on Request*)" on July 7, 2022. Complaint at para. 20; see also Exhibit to Complaint filed with Court. Within the 90-day period provided in the Notice of Right to sue, Plaintiff filed the Complaint in the instant action on or about August 24, 2022. Plaintiff requested the issuance of Summonses on October 14, 2022. Summonses were issued by the Court on October 17, 2022. Defendants were served on November 2, 2022 and affidavits of service were filed on November 5, 2022. Undersigned Attorney Craig Dickinson filed a Notice of Appearance on November 15,

2022. Concurrently, Attorney Dickinson filed a consent motion requesting until January 6, 2023 to file a responsive pleading. The Court granted that motion.

On December 13, 2022, Attorney Dickinson asked Plaintiff's counsel, Attorney Santos, if he was aware that Plaintiff had signed an arbitration agreement, informed him that she had, and asked whether the Plaintiff would stipulate to dismiss the matter and proceed to arbitration. On December 14, 2022, Attorney Dickinson sent Attorney Santos a copy of the EEDRA signed by the Plaintiff. On December 27, 2022, Attorney Santos advised Attorney Dickinson that they did not believe the EEDRA was enforceable. See email exchanges attached hereto as Exhibit 4. This motion followed.

### III.  LEGAL STANDARD

"The Second Circuit has recognized that, depending on the facts and arguments presented, a motion to dismiss based on an arbitration clause may be treated as a motion to compel arbitration[.]" *Gilbert v. Indeed, Inc.*, 513 F. Supp. 3d 374, 390 (S.D.N.Y. 2021), quoting *Begonja v. Vornado Realty Tr.*, 159 F. Supp. 3d 402, 405 n.1 (S.D.N.Y. 2016) (citing *Wabtec Corp. v. Faiveley Transp. Malmo AB*, 525 F.3d 135, 139-140 (2d Cir. 2008)). The motion must either "explicitly or implicitly ask[ ] the court to order arbitration." *Gilbert*, 513 F. Supp. 3d at 390, quoting *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016). To avoid any confusion, Westlake seeks dismissal of the Complaint in its entirety or a stay of this action pursuant to *Rost v. Liberty Coca-Cola Beverages, LLC*, No. 20 CV 10559 (VB), 2021 WL 3723092, at *5 (S.D.N.Y. Aug. 23, 2021) and *Worthington v. JetSmarter, Inc.*, 2019 WL 4933635, at *8 (S.D.N.Y. Oct. 7, 2019), and explicitly moves to compel arbitration pursuant to the Federal Arbitration Act. 9 U.S.C. §1 *et seq.* [4]

---

[4] In light of the fact that all of Plaintiff's pending claims can and should be addressed and resolved through arbitration, Defendants contend that dismissal of this action is more appropriate than a stay.

Under 9 U.S.C. § 4, a federal district court has jurisdiction to compel arbitration within its district:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28 ... for an order directing such arbitration proceed in the manner provided for in such agreement...The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed.

When warranted, compelling arbitration is not discretionary. The United States Supreme Court has repeatedly recognized that the Federal Arbitration Act ("FAA") establishes a liberal policy favoring arbitration when the parties contract for that mode of dispute resolution. See, e.g., *AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 337 (2011); see also *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983) (referring to the "liberal federal policy favoring arbitration"). This policy favoring arbitration extends and applies to arbitration policies between employers and employees. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26-27 (1991) (holding that individual employee who signed arbitration agreement can be compelled to arbitrate); *Ferguson v. United Healthcare*, No. 3:08-cv-1389 (MRK), 2008 U.S. Dist. LEXIS 101796 at * 15-16 (D. Conn. Dec. 17, 2008) (granting employer's motion to compel arbitration); *Filloramo v. NewAlliance Invs., Inc.*, No. 3:06-cv-01825 (AVC), 2007 U.S. Dist. LEXIS 29939, at *12-13 (D. Conn. Apr. 23, 2007) (dismissing case and granting motion to compel arbitration). Therefore, "[b]y its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Daly v. Citigroup Inc.*, 939 F.3d 415, 421 (2d Cir. 2019), quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985) (emphasis in original). See also,

*Badinelli v. Tuxedo Club*, 183 F. Supp. 3d 450, 453 (S.D.N.Y. 2016), quoting *Jung v. Skadden, Arps, Slate, Meagher & Flom, LLP*, 434 F.Supp.2d 211, 214–15 (S.D.N.Y. 2006).

When deciding a motion to compel arbitration, courts apply a standard "similar to that applicable for a motion for summary judgment." *Rost*, 2021 WL 3723092, at *3, quoting *Bensadoun v. Jobe–Riat*, 316 F.3d 171, 175 (2d Cir. 2003); see also, *Gilbert*, 513 F. Supp. 3d at 390, quoting *Meyer v. Uber Techs., Inc*., 868 F.3d 66, 74 (2d Cir. 2017). "Where the undisputed facts in the record require the matter of arbitrability to be decided against one side or the other as a matter of law, [courts] may rule on the basis of that legal issue and avoid the need for further court proceedings." *Id*.

"The party seeking to stay the case in favor of arbitration bears an initial burden of demonstrating that an agreement to arbitrate was made." *Rost*, 2021 WL 3723092, at *3, quoting *Hines v. Overstock.com, Inc.,* 380 F. App'x 22, 24 (2d Cir. 2010) (summary order). "This burden does not require the moving party to show initially that the agreement would be enforceable, merely that one existed." Id. (emphasis in original). Once that is established, the party "seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid." *Rost*, 2021 WL 3723092, at *3, quoting *Harrington v. Atl. Sounding Co.*, 602 F.3d 113, 124 (2d Cir. 2010). The party opposing arbitration "may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried." *Rost*, 2021 WL 3723092, at *3, quoting *Oppenheimer & Co. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995).

## IV.     ARGUMENT

Westlake seeks to dismiss this action and compel Plaintiff to submit the issues raised in her Complaint to arbitration consistent with the terms of the EEDRA. "In deciding whether to compel arbitration, a court must determine (i) whether the parties agreed to arbitrate; (ii) if so,

the scope of the agreement to arbitrate; (iii) whether Congress intended any federal statutory claims asserted to be non-arbitrable; and (iv) if some, but not all, of the claims in the case are arbitrable, whether to stay the balance of the proceedings pending arbitration." *Rost*, 2021 WL 3723092, at *3, citing *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 169 (2d Cir. 2004). See also *Daly*, 939 F.3d at 421, quoting *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 844 (2d Cir. 1987). In accordance with the "strong federal policy favoring arbitration as an alternative means of dispute resolution," we resolve any doubts concerning the scope of arbitrable issues "in favor of arbitrability." *Daly*, 939 F.3d at 421, quoting *State of N.Y. v. Oneida Indian Nation of N.Y.*, 90 F.3d 58, 61 (2d Cir. 1996). Arbitration must be compelled "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id*.

    A. <u>**The parties agreed to arbitrate.**</u>

Plaintiff's complaint states that she commenced employment on or about May 4, 2015. Consistent with starting work on the alleged date, she signed a variety of on-boarding documents. See Affidavit of Megan Feldmeth and documents at Exhibit 1. In addition to mandatory forms like an I-9 and W-4, Plaintiff also signed forms required by Westlake, including but not limited to a Phone and Internet Monitoring agreement, a Meal Rest Break and Time Card Policy agreement, an Employee Confidentiality Agreement, an Information Access Security Agreement, and a Notice to Employee. Id. Critical here, Plaintiff also signed the EEDRA at issue in this motion. Id. and Exhibit 2.

That agreement states in pertinent part that:

1. **AGREEMENT TO ARBITRATE AND CLASS ACTION WAIVER**

Employee hereby agrees to submit to binding arbitration before a neutral arbitrator all disputes and claims out of my submission of my employment application or any

...

> and all disputes that may arise out of or already exist related to my employment application or any and all disputes that may arise out of or already exist related to my employment or relationship with Employer, whether during or after that employment, including, but not limited to claims for wages or other compensation due; claims for breach of any contract or covenant, express or implied; tort claims; claims for discrimination, including discrimination based on race, sex, religion, national origin, age, marital status, sexual orientation, handicap, disability, or medical condition; claims for benefits, except as excluded in the following paragraph; and claims for violation of any federal, state or other governmental constitution, statute, ordinance or regulation. … I understand that this Agreement to Arbitrate applies to claims that pre-exist or may pre-exist the date of this Agreement. The claim will be submitted to binding arbitration before a neutral arbitrator. I understand that I am waiving my right to a jury trial. . . . Such arbitration shall be conducted in accordance with the rules of the arbitration association or service from which the arbitrator is selected (e.g. American Arbitration Association, AMS, ADR, ARC etc.) and will be governed by the Federal Arbitration Act (9 U.S.C. §et seq.). ... The Employer will pay the Arbitrator's fees and costs associated with the arbitration hearing as described below. Discovery will be more than minimal and will be adequate to permit you to prepare your case for hearing as determined by the arbitrator. The arbitrator will be empowered to grant any type of relief which would be available to Employee or company in a Superior Court action with the exception of punitive or injunctive relief. The arbitrator will be required to render his or her opinion in writing.

Id. In addition to explicitly stating what claims were not covered by the agreement, describing arbitration procedure under the agreement, the term of the agreement, and setting parameters for construction and enforceability, the agreement also states:

- "Each Party's promise to forego court proceedings and to resolve Claims by arbitration in accordance with the provisions of this Agreement is consideration for the other Party's like promise."  Id. at para. 4.

- "This is the complete agreement of the parties on the subject of arbitration of Claims. . . ." Id. at para. 8.

- "The Employee acknowledges that he or she has carefully read this Agreement, that Employee understands its terms, that all understandings between the Employee and Company relating to the subjects covered in this Agreement are contained in it, and that Employee has entered this Agreement voluntarily and not in reliance on any promises or representations by the Company other than this contain in this Agreement itself." Id. at para. 9.

The Agreement was signed by the Plaintiff on May 4, 2015, like her other on-boarding documents, the day she alleges she started her employment with Westlake.

In view of the express terms reflected above and in the agreement itself, it is self-evident that the parties entered an agreement to arbitrate. Plaintiff should be compelled to abide by it.

**B.   The current dispute falls within the scope of the arbitration agreement.**

All the claims at issue in Plaintiff's Complaint fall within the scope of the arbitration agreement. The Agreement explicitly applies to: "any and all disputes that may arise out of or already exist related to my employment or relationship with Employer, whether during or after that employment, including, but not limited to claims for wages or other compensation due; . . . ; claims for discrimination, including discrimination based on . . . sex . . . ; and claims for violation of any federal, state or other governmental constitution, statute, ordinance or regulation." Id. at para. 1. All of Plaintiff's causes of action assert claims arising out of her employment with Westlake, specifically sex discrimination under state and federal law, unequal pay on the basis of gender under state and federal law, and retaliation under state and federal law. Thus, Plaintiff's claims undeniably fall within the scope of the Agreement. Plaintiff should be compelled to arbitrate them pursuant to the Agreement.

Even if there were a question about whether the claims in this suit fell within the scope of the arbitration agreement, it would not be the role of this Court to decide that issue in this instance. The FAA does not just empower the court to compel arbitration, but to order arbitration "in accordance with the terms of the agreement." 9 U.S.C. § 4.  In determining whether Plaintiff's claims are subject to arbitration, the threshold inquiry is an analysis of the contractual language. *Equal Employment Opportunity Commission v. Waffle House, Inc*., 534 U.S. 279, 289 (2002)("Absent some ambiguity in the agreement ... it is the language of the contract that defines

12

the scope of disputes subject to arbitration.") See also, *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57 (1995).

Here the agreement expressly and unequivocally requires that all issues about the applicability or enforceability of the Agreement are to be resolved through arbitration. Specifically:

> Any issue or dispute concerning the formation, applicability, interpretation or enforceability of this Agreement, including any claim or contention that all or any part of this Agreement is void or voidable, shall be subject to arbitration as provided herein. The arbitrator, and not any federal, State or local court or agency, shall have authority to decide any such issues or disputes. The decision of an arbitrator on any such issue or dispute, as well as on any Claim submitted to arbitration as provided in this Agreement shall be final and binding upon the parties. If any provision of this Agreement is adjudged to be void or otherwise unenforceable, in whole or in part, such adjudication shall not affect the validity of the remainder of the Agreement. Either party may bring an action in any court of competent jurisdiction to compel arbitration under this Agreement and to enforce and/or confirm an arbitration award. Except as otherwise provided in this Agreement, both the Company and the Employee agree that neither party shall initiate or prosecute any lawsuit or administrative action which relates in any way to any Claim covered by this Agreement.

EEDRA, Exhibit 2 at para. 6. Further reinforcing the applicability of the EEDRA to the claims at issue in this suit, the Agreement specifically states that it "shall survive the employment relationship between the Company and the Employee and shall apply to any Claim whether it arises or is asserted during or after termination of the Employee's employment with the company." Id. at para. 5.

Moreover, in reviewing the scope of the arbitration agreement, the court must be guided by the principle that arbitration agreements are favored and are to be broadly construed with doubts being resolved in favor of coverage. *AT&T Technologies v. Communications Workers of America*, 475 U.S. 643, 648-650 (1986); *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25. Prevailing federal precedent directs courts to "construe

13

arbitration clauses as broadly as possible." *Collins & Aikman Prods. Co. v. Building Sys.*, 58 F.3d 16, 19 (2d Cir. 1995) (internal quotations and citations omitted). "[A]s a matter of federal law, any doubts concerning the scope of the arbitrable issues should be resolved in favor of the arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem. Hosp.*, 460 U.S. at 24-25. Further, the "existence of a broad agreement to arbitrate creates a presumption of arbitrability which is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that [it] covers the asserted dispute." *Oldroyd v. Elmira Savings Bank, FSB*, 134 F.3d 72, 76 (2d Cir. 1998); see also, *Mehler v. Terminix Int'l Co.*, 205 F.3d 44, 49 (2d Cir. 2000), *cert.denied*, 533 U.S. 911 (2001) (same) (citing *Collins & Aikman Prods. Co.*, 58 F.3d at 19); *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 74 (2d Cir. 1997) (same).

Here, the arbitration clause contained in the EEDRA is broad. To wit: "***all*** disputes and claims out of my submission of my employment application or ***any and all*** disputes that may arise out of or already exist related to my employment application or ***any and all disputes*** that may arise out of or already exist related to my employment or relationship with Employer, whether during or after that employment …." EEDRA, Ex. 2 at para. 1.  Moreover, the EEDRA specifically includes: "claims for ***wages or other compensation*** due; . . . claims for ***discrimination***, including ***discrimination*** based on race, ***sex***, religion, national origin, age, marital status, sexual orientation, handicap, disability, or medical condition; … and claims for violation of ***any federal***, ***state*** or other governmental constitution, ***statute***, ordinance or regulation." Id. The Second Circuit has held that this is "precisely the kind of broad arbitration

14

clause that justifies a presumption of arbitrability." *Oldroyd*, 134 F.3d at 76 (clause in employment agreement requiring arbitration of "any dispute, controversy or claim arising under or in connection with this Agreement" creates presumption of arbitrability of employment-related claims). See also, *Mehler*, 205 F.3d at 49-50 (clause providing for arbitration of "'any controversy or claim . . . arising out of or relating to the agreement is ...' a classically broad one."); *Collins & Aikman Prods. Co*., 58 F.3d at 20 (clause requiring arbitration of "'any claim or controversy arising out of or relating to the agreement"' is "the paradigm of a broad clause.").

Further reinforcing the breadth, the EEDRA specifies very limited exceptions: 1) Workers Compensation and Unemployment Insurance claims; 2) claims for injunctive or other equitable relief for unfair competition or unauthorized disclosure of trade secrets; 3) and claims based on an employee benefit or pension plan covered by its own arbitration or dispute resolution process. EEDRA, Ex. 2 at para. 2. Because Plaintiff's claims clearly arise out of her employment at Westlake and do not fall within any of the exceptions set forth in the Agreement, any argument that it does not apply to the claims advanced by Plaintiff in this case is specious.

Given the terms of the EEDRA and well-settled law, any argument that the court must rule on the scope or enforceability of the EEDRA before referral to arbitration must be rejected. Indeed, a court should not determine whether an arbitration agreement is enforceable or whether a particular claim is covered by the arbitration agreement where the parties have clearly and unmistakably delegated that task to an arbitrator. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68 (2010) ("We have recognized that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy."); *Moore v. T-Mobile USA, Inc.,* 10 CV 527 (SLT), 2010 U.S. Dist. LEXIS 143874, at *10 (E.D.N.Y. Nov. 8, 2010) ("the question of whether the parties have

agreed to arbitrate a specific controversy or even agreed to arbitration at all may be delegated to the arbitrator to decide").

Thus, it is for an arbitrator to decide whether the current claims regarding Plaintiff's employment fall within the scope of the agreement, not this court. That outcome is consistent with well-settled law on the issue and further compels the conclusion that this matter must be referred to arbitration.

### C. **Congress has not barred arbitration of any of the claims at issue.**

Given Plaintiff's counsel's assertion that the EEDRA is "unenforceable," Plaintiff is expected to argue that Section 7515 of the C.P.L.R. renders the EEDRA null and void under New York law. They are incorrect.

To begin with, the Second Circuit has held that Title VII and EPA claims – the same as those asserted by the Plaintiff in this case -- are arbitrable. *Daly*, 939 F.3d at 422. Prior efforts to circumvent that conclusion have been rejected. "New York State cannot exempt Plaintiffs' federal employment discrimination and state law claims from mandatory arbitration under the FAA." *Gilbert*, 513 F. Supp. 3d 374, 396–97 (S.D.N.Y. 2021). In reaching that conclusion, the *Gilbert* court noted: "Congress did not intend that discrimination claims be exempted from the FAA or its requirement that arbitration agreements requiring private dispute resolution be enforced "save upon such grounds as exist at law or in equity for the revocation of any contract. New York State lacks power to reach a contrary conclusion and to exclude such claims from the FAA when Congress has chosen not to do so." *Id*. citing, 9 U.S.C. § 2; *Gilmer*, supra; *Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 203 (2d Cir. 1999) (Title VII); *Southland Corp. v. Keating*, 465 U.S. 1, 16, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984). Indeed, *Southland* foreclosed any such argument. "The Federal Arbitration Act rests on the authority of Congress to enact

substantive rules under the Commerce Clause" and "[i]n enacting § 2 of the federal Act, Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Southland*, 465 U.S. at 10-1. Thus, "Congress intended to foreclose state legislative attempts to undercut the enforceability of arbitration agreements." *Id*. at 16. See also, *White v. WeWork Cos., Inc.*, 2020 WL 3099969, at *5 (S.D.N.Y. June 11, 2020) (holding that Section 7515 was preempted by FAA); *Latif v. Morgan Stanley & Co. LLC*, 2019 WL 2610985 (S.D.N.Y. June 26, 2019) (same).

In view of the foregoing, any argument that Plaintiff's claims for disparate treatment sex discrimination under state and federal law, unequal pay on the basis of gender under state and federal law, and retaliation under state and federal law are not subject to arbitration should be rejected.

**Conclusion**

For the reasons set forth herein, the matter should be dismissed and Plaintiff compelled to arbitrate her claims consistent with the terms of the EEDRA.

Dated: Hartford, Connecticut
January 6, 2023

        FORD HARRISON, LLP
        *Attorneys for Defendants*
        *Westlake Flooring Services, Inc., et al.,*

        By: */s/ Craig Dickinson*
            Craig Dickinson
            185 Asylum St, Suite 820
            Hartford, Connecticut 06103
            Telephone: 860-740-1371
            Email: cdickinson@fordharrison.com

**CERTIFICATE OF SERVICE**

      This is to certify that on this 6th day of January, 2023, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

    Jimmy M. Santos, Esq.
    LAW OFFICES OF JIMMY M. SANTOS, PLLC
    28 Wilson Place
    Cornwall, New York 12518
    jmssesq@gmail.com
    www.nycivilrightslaw.com

                                          */s/ Craig Dickinson*
                                          Craig Dickinson