# EXHIBIT 1



# Westlake Flooring Services — New Hire Checklist

| Name: | Start Date: | Department/Region | Job Title: | Supervisor |
|---|---|---|---|---|
| Jeanine Cohen | 05/04/2015 | WFS_Westlake Flooring | Area Manager | Jennifer Fiore |

| Have | Need | Recruiter Verification | Item | | |
|---|---|---|---|---|---|
| ☐ | ☐ | ✓ | Status Change | Pre-Employment | |
| ☐ | ☐ | ✓ | Application + resume | | |
| ☐ | ☐ | ✓ | Testing (Written & Hire Select) | | |
| ☐ | ☐ | ✓ | Offer Letter | | |
| ☐ | ☐ | ✓ | Ticket | | |
| ☐ | ☐ | ✓ | Background Check Consent | | |
| ☐ | ☐ | ✓ | Completed Background | | |
| ☐ | ☐ | ✓ | Pre-Employment Screening for Debt Obligations | | |
| ☐ | ☐ | ✓ | Applicant Statement and Agreement | | |
| ☐ | ☐ | ✓ | Notice to Employee | Day 1 of Employment | |
| ☐ | ☐ | ✓ | W4 Forms | | |
| ☐ | ☐ | ✓ | Clear Copy of I-9 Identification Documents | | |
| ☐ | ☐ | ✓ | Emergency Contact Information | | |
| ☐ | ✗ | ✓ | Direct Deposit Form | | |
| ☐ | ☐ | ✓ | Educational Background | | |
| ☐ | ☐ | ✓ | Voluntary | | |
| ☐ | ☐ | ☐ | Compli Policies - completed history | | |
| ☐ | ☐ | ✓ | Phone and Internet Monitoring | Stand Alone Policies | |
| ☐ | ☐ | ✓ | Meals, Rest Breaks, and Time Card Policy | | |
| ☐ | ☐ | ✓ | Employee Confidentiality Agreement | | |
| ☐ | ☐ | ✓ | Dispute Resolution Agreement | | |
| ☐ | ☐ | ✓ | Information Access Security Agreement | | |
| ☐ | ☐ | ✓ | Completed I-9 Link confirmation # 15ØC8WEC DØØØ69753 | ADP Verification | |
| ☐ | ☐ | ☐ | WOTC Link online | | |
| ☐ | ☐ | ☐ | E-Verify (printed and attached) | | |
| ☐ | ☐ | ☐ | Referral Form (copy should be given to Lucy) | | |

| AD Username: | jcohen7 |
|---|---|
| Source/ Referral: | |
| Badge #: | 06014372 |
| Extension: | (845) 475-1054 |
| Ticket # | 84683 |

### Administration (For HR use only)

| I-9 Section 2: | [signature] |
|---|---|
| HR Manager: | [signature] |
| Success Factors: | [signature] |
| Time Force Email: | |
| Payroll confirmed: | [signature] |
| Compli Setup | VN |
| Notification Email (Cory, Operations, HR Staff): | |
| Welcome Post Card | VN |
| Birthday | May 9 |

## Phone and Internet Monitoring

In order to conduct effective training, and as part of Westlake's continuous effort to improve the quality of service provided, Westlake's Management and Executive Staff have the option to monitor telephone calls and Internet and email use.

*Internal monitoring helps achieve many directives:*

- It ensures that information provided to internal and external customers is accurate, consistent, and courteous
- It ensures that the department and performance standards and quality levels are met
- It assists in identifying individual and group training and/or performance issues

The equipment, services, and technology provided to access the Internet remain at all times the property of Westlake. As such, Westlake reserves the right to monitor Internet traffic, and retrieve and read any data composed, sent, or received through our online connections and stored in our computer systems. Westlake does, in fact, monitor such Internet use on a regular basis.

Monitoring results may or may not be discussed with each employee on a case-by-case basis at any point and time deemed necessary by your supervisor, manager, or the Executive Staff. Employees will not be aware at the time telephone calls or Internet use are being monitored. The result of phone monitoring include, but are not limited to reward, coaching, verbal/written counseling, and/or termination.

Employees should practice discretion when making any personal calls. Personal use of the telephone for long-distance and toll calls is not permitted, unless it is an emergency. Employees may be required to reimburse the Company for any charges resulting from their personal use of the telephone. In the event the phone call is determined to be a personal call, monitoring shall immediately cease.

*My signature below indicates that I have read, understand and agree to Westlake's Phone Monitoring Policy.*

SIGNATURE: *[signature]*
PRINT NAME: Jeanine P. Cohen
DATE: 05-04-2015

Rev. 01/2007

## MEAL, REST BREAK AND TIME CARD POLICY

Time cards are used as a means of accurately recording hours and calculating pay for non-exempt employees. It is important that time cards be completed accurately each day. Non-exempt employees may not work "off the clock" in any circumstances. Employees are expected to accurately record your work history by swiping your time card each time you begin your shift, start and end your meal period, and end your shift. Any falsification of or failure to provide accurate information on your time card, or clocking in and out for any other employee, is strictly prohibited and is grounds for immediate termination.

Westlake requires that if you discover that anyone has not accurately recorded or reported your time, you notify Westlake's Human Resources Department immediately.

All non-exempt employees are authorized and permitted to take a full 10-minute break near the middle of the first half of their shift and again near the middle of the second half of their shift at a time that does not interfere with the flow of work or customer service. These breaks may not be combined or added to an employee's meal period. Supervisors will schedule these break periods.

Westlake provides non-exempt employees with the right and opportunity to take a one hour meal period beginning that must be taken by the end of the 5th hour after they began work each day. This meal period is mandatory unless the total hours to be worked that day is 6 or less, and Westlake and the employee consent in writing to waive such meal period. In addition, employees who work more than 10 hours in a day have the right and opportunity to take a second one-half hour meal period. This second meal period is mandatory unless the total hours to be worked that day is 12 or less, and Westlake and the employee consent in writing to waive such second meal period. Non-exempt employees are required to record the beginning and end of their meal periods. It is a violation of Westlake policy not to do so.

Rest and meal periods are intended to provide employees and opportunity for rest and relaxation. Accordingly, they should be enjoyed away from employee work areas and non-exempt employees are not permitted to perform any duties during such periods. Break rooms are available for these purposes. Non-exempt employees are entirely relieved of responsibilities and restrictions during their meal periods, unless they have agreed with Westlake in writing to work an on-duty meal period that will be paid by Westlake.

Any violations of this policy immediately must be reported to the Human Resources Department. Failure by a non-exempt employee to take his/her meal

Rev. 1/2007

periods, or by any supervisor or manager to require his/her non-exempt employees to take required meal periods may be grounds for disciplinary action.

*My signature below indicates that I have read, understand and agree to abide by Westlake's Time Card Policy.*

SIGNATURE: _____

PRINT NAME: Jeanine P. Cohen

DATE: 05.04.2015

Rev. 1/2007


Westlake Financial Services

# EMPLOYEE CONFIDENTIALITY AGREEMENT

This Employee Confidentiality Agreement ("**Agreement**") is entered into by and between Westlake Services, LLC dba Westlake Financial Services (the "**Employer**"), on behalf of itself, its subsidiaries and other corporate affiliates (collectively referred to herein as the "**Employer Group**"), and ___Jeanine P. Cohen___ (the "**Employee**") (the Employer and the Employee are collectively referred to herein as the "**Parties**") as of ___May 4th 2015___ (the "**Effective Date**").

In consideration of the Employee's employment by the Employer, which the Employee acknowledges to be good and valuable consideration for his/her obligations hereunder, the Employer and the Employee hereby agree as follows:

1. Confidentiality and Security.

    (a) Confidential Information.

    The Employee understands and acknowledges that during the course of employment by the Employer, he/she will have access to and learn about confidential, secret and proprietary documents, materials and other information, in tangible and intangible form, of and relating to the Employer Group, its businesses and existing and prospective customers, suppliers, investors and other associated third parties ("**Confidential Information**"). The Employee further understands and acknowledges that this Confidential Information is of great competitive importance and commercial value to the Employer Group, and that improper use or disclosure of the Confidential Information by the Employee might cause the Employer to incur financial costs, loss of business advantage, liability under confidentiality agreements with third parties, civil damages and criminal penalties.

    Confidential Information includes information disclosed to the Employee, either directly or indirectly, in spoken, printed, electronic or any other form or medium, known to the Employee, or developed by the Employee, alone or with others, in connection with his/her employment with the Employer: (i) that is not generally known in the industry in which the Employer is or may become engaged; (ii) that has been created, discovered, developed, or otherwise become known to the Employer or in which property rights have been assigned or otherwise conveyed to the Employer; and (iii) that has material economic value or potential material economic value to the Employer's present or future business. Confidential Information shall also include trade secrets and other discoveries, developments, designs, improvements, inventions, formulas, software programs, processes, techniques, know-how, negative know-how, data, research, techniques, customer and supplier lists, and any modifications or enhancements of any of the foregoing, and all Employer program, pricing, marketing, sales, business contract, or other financial or business information. The Employee understands that the above list is not exhaustive, and that Confidential Information also includes other information that is marked or otherwise identified as confidential or proprietary, or that would otherwise appear to a reasonable person to be confidential or proprietary.

    (b) Disclosure and Use Restrictions.

    The Employee agrees that at all times, both during the employment and after the cessation of employment, he/she will not, directly or indirectly, except as required by the normal business of the Employer or as expressly consented to in writing: (i) disclose, publish, or make available, other than to an authorized

employee, officer, or director of the Employer, any Confidential Information; (ii) sell, transfer, or otherwise use or exploit any Confidential Information; or (iii) retain upon termination of Employee's employment with the Employer any Confidential Information, any copies thereof, or any other materials containing or constituting Confidential Information.

If Employee becomes aware of any unauthorized access to or possession or knowledge of any Confidential Information, Employee shall immediately notify Employer. Employee agrees to provide any and all reasonable assistance to Employer to protect the confidentiality of such Confidential Information and to take all reasonable steps requested by Employer to prevent the occurrence of unauthorized access, use, possession, or knowledge.

2. Duration of Confidentiality Obligations.

The Employee understands and acknowledges that his/her obligations under this Agreement shall commence immediately upon the Employee first having access to such Confidential Information (whether before or after he/she begins employment by the Employer) and shall continue during and after his/her employment by the Employer until such time as such Confidential Information has become public knowledge other than as a result of the Employee's breach of this Agreement.

3. Remedies and Injunctive Relief.

Employee understands that any breach of his/her duties under this Agreement may result in irreparable injury to the Employer for which the Employer may not have an adequate remedy at law. Employee therefore agrees that, in the event of any breach of this Agreement by him/her, the Employer may, in addition to any other remedies available to it, bring an action for injunctive relief, specific performance, or both, and have entered a temporary restraining order, preliminary or permanent injunction, or order compelling specific performance.

4. Successors and Assigns.

This Agreement shall be binding on and shall inure to the benefit of the parties to this Agreement. The Employer may assign this Agreement to any subsidiary or corporate affiliate in the Employer Group, or to any successor or assign (whether direct or indirect, by purchase, merger, consolidation or otherwise) to all or substantially all of the business or assets of the Employer. The Employee may not assign this Agreement or any part hereof.

5. Arbitration.

The Parties agree that any dispute, controversy or claim arising out of or related to this Agreement or any breach of this agreement shall be submitted to and decided by binding arbitration in Los Angeles, California. Arbitration shall be administered by the American Arbitration Association (www.adr.org) or any other organization that you may choose subject to Employer's approval. Any arbitral award determination shall be final and binding upon the Parties. This agreement to arbitrate is freely negotiated between Employee and Employer and is mutually entered into between the parties. Each party fully understands and agrees that they are giving up certain rights otherwise afforded to them by civil court actions, including but not limited to the right to a jury trial.

 **By initialing here, Employee acknowledges he/she has read this paragraph and agrees with the arbitration provision herein.**

6. Governing Law; Jurisdiction and Venue.

   This Agreement, for all purposes, shall be construed in accordance with the laws of California without regard to conflicts-of-law principles. Any action or proceeding by either Party to enforce this Agreement shall be brought only in any state or federal court located in the state of California, county of Los Angeles. The Parties hereby irrevocably submit to the exclusive jurisdiction of such courts and waive the defense of inconvenient forum to the maintenance of any such action or proceeding in such venue.

7. Severability and Interpretation.

   Each provision of this Agreement shall be viewed as separate and divisible and that in the event that any provision shall be held invalid, the remaining provisions shall continue in full force and effect. In the event that any provision of this Agreement shall be held invalid because of its scope or duration, the court making such a determination shall have the power to limit the scope or duration of the provision in question and, in its limited form, such provision shall then be enforceable.

8. Integration.

   This Agreement sets forth the entire agreement and understanding between Employer and Employee and supersedes any and all prior agreements, arrangements, and understandings, written or oral, relating to the same subject of this Agreement.

9. Modification and Waiver.

   This Agreement may not be amended, modified, superseded, or terminated in whole or in part except in writing. The failure of the Employer at any time to require performance of any provision of this Agreement shall in no way affect its right at a later time to enforce that provision.

10. Counterparts.

    This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same instrument.

**IN WITNESS WHEREOF**, the Parties have executed this Agreement as of the Effective Date above.

**Employee**                                **Westlake Financial Services**

Signature: _____            By: _____
Print Name: Jeanine P. Cohen                Name: Ian Anderson
                                            Title: President

# Information Access Security Agreement

To protect the security, integrity, exposure, and recordkeeping elements of all data used, stored, acquired or produced by the tools available at Westlake Financial Services ("Westlake"), by signing below, the user agrees to the following conditions for information access:

I will be given passwords to certain subscriber websites (i.e. not publicly available for free), used for research or skip-tracing on accounts belonging to Westlake. When given a personal password, I am not to reveal my password to anyone in or outside Westlake for any reason, with the exception of a designated IT Professional or the Information Security Officer.

The subscriber websites are for performing research or skip-tracing duties on WESTLAKE RELATED ACCOUNTS ONLY. I understand that I am prohibited from using any subscriber website for any purpose other than to skip-trace a Westlake account and using it for any other purpose is grounds for immediate termination and may result in my being reported to the appropriate authorities. I understand that this prohibition includes, but is not limited to, skip tracing friends, relatives, present or past boyfriends/girlfriends, celebrities or famous people and other Westlake employees, past or present. This prohibition also pertains to the running of any credit bureaus on anyone other than a Westlake account.

I agree that I will not reveal my passwords to the Westlake network and other operating systems to anyone in or outside Westlake for any reason with the exception of a designated IT Professional or the Information Security Officer.

I understand that access to all systems is solely for use in conducting Westlake business.

I understand that software programs not registered and belonging to Westlake are not to be installed on any company computer or network without the express consent of Westlake.

No software program owned by Westlake is to be removed or transferred for any reason from Company property.

*Company information or information acquired using tools provided by Westlake will not be shown or revealed to anyone outside Westlake, without authorization and verification of a properly executed Non-Disclosure Agreement.*

Although I may have passwords to access computer, voicemail, and email systems, these technical resources belong to Westlake. They are to be accessible at all times and are subject to inspections by Westlake with or without notice. Westlake may override and/or revoke any applicable passwords or codes as deemed necessary.

Employees are responsible for any and all consequences of the misuse or sharing of assigned usernames and passwords.

*I understand that I am expected to abide by this policy. Failure to adhere to the standards set forth above may result in disciplinary action up to and including termination. Furthermore, I understand that I may be held personally liable for the consequences of my actions, whether intentional or inadvertent.*

Signature: [signed]

Print Name: Jeanine P. Cohen     Date: 05.04.2015

*Rev. 8/18/2008*

## NOTICE TO EMPLOYEE
### Labor Code section 2810.5

### EMPLOYEE

Employee Name: Jeanine P. Cohen

Start Date: 5/4/2015

### EMPLOYER

Legal Name of Hiring Employer: Westlake Financial Services

Is hiring employer a staffing agency/business (e.g., Temporary Services Agency; Employee Leasing Company; or Professional Employer Organization [PEO])?  ☐ Yes   ☐ No

Other Names Hiring Employer is "doing business as" (if applicable):

Westlake Flooring Services

Physical Address of Hiring Employer's Main Office:

4751 Wilshire Blvd Suite 100       Los Angeles, CA    90010

Hiring Employer's Mailing Address (if different than above):

Hiring Employer's Telephone Number: (888) 739-9192

If the hiring employer is a staffing agency/business (above box checked "Yes"), the following is the other entity for whom this employee will perform work:

Name: _____

Physical Address of Main Office: _____

Mailing Address: _____

Telephone Number: _____

### WAGE INFORMATION

Rate(s) of Pay: $5,000.00                    Overtime Rate(s) of Pay: n/a

Rate by (check box):   ☐ Hour   ☐ Shift   ☐ Day   ☐ Week   ☒ Salary   ☐ Piece rate   ☐ Commission

☒ Other (provide specifics): $5,000 a month + bonus (guarantee of $2,000 for the first three (3) months)

Does a written agreement exist providing the rate(s) of pay?   (check box)   ☒ Yes   ☐ No

If yes, are all rate(s) of pay and bases thereof contained in that written agreement?   ☒ Yes   ☐ No

Allowances, if any, claimed as part of minimum wage (including meal or lodging allowances):

(If the employee has signed the acknowledgment of receipt below, it does not constitute a "voluntary written agreement" as required under the law between the employer and employee in order to credit any meals or lodging against the minimum wage. Any such voluntary written agreement must be evidenced by a separate document.)

Regular Payday: Two business days after the 15th and two business days after the last day of the month

DLSE-NTE (rev 11/2014)

### WORKER'S COMPENSATION

Insurance Carrier's Name: Intercare Insurance Services

Address: P.O. Box 711 Pasadena, CA 91109

Telephone Number: (626) 304-1200

Policy No.: 46587

☐ Self-Insured (Labor Code 3700) and Certificate Number for Consent to Self-Insure: _____

### PAID SICK LEAVE

Unless exempt, the employee identified on this notice is entitled to minimum requirements for paid sick leave under state law which provides that an employee:

a. May accrue paid sick leave and may request and use up to 3 days or 24 hours of accrued paid sick leave per year;
b. May not be terminated or retaliated against for using or requesting the use of accrued paid sick leave; and
c. Has the right to file a complaint against an employer who retaliates or discriminates against an employee for
   1. requesting or using accrued sick days;
   2. attempting to exercise the right to use accrued paid sick days;
   3. filing a complaint or alleging a violation of Article 1.5 section 245 et seq. of the California Labor Code;
   4. cooperating in an investigation or prosecution of an alleged violation of this Article or opposing any policy or practice or act that is prohibited by Article 1.5 section 245 et seq. of the California Labor Code.

The following applies to the employee identified on this notice: (Check one box)

☐ 1. Accrues paid sick leave only pursuant to the minimum requirements stated in Labor Code §245 et seq. with no other employer policy providing additional or different terms for accrual and use of paid sick leave.

☒ 2. Accrues paid sick leave pursuant to the employer's policy which satisfies or exceeds the accrual, carryover, and use requirements of Labor Code §246.

☐ 3. Employer provides no less than 24 hours (or 3 days) of paid sick leave at the beginning of each 12-month period.

☐ 4. The employee is exempt from paid sick leave protection by Labor Code §245.5. (State exemption and specific subsection for exemption):_____

### ACKNOWLEDGEMENT OF RECEIPT
(Optional)

| Veronica Rivera | Jeanine P. Cohen |
|---|---|
| (PRINT NAME of Employer representative) | (PRINT NAME of Employee) |
| *[signature]* | *[signature]* |
| (SIGNATURE of Employer Representative) | (SIGNATURE of Employee) |
| 05/04/2015 | 05/04/2015 |
| (Date) | (Date) |

The employee's signature on this notice merely constitutes acknowledgement of receipt.

Labor Code section 2810.5(b) requires that the employer notify you in writing of any changes to the information set forth in this Notice within seven calendar days after the time of the changes, unless one of the following applies:  (a) All changes are reflected on a timely wage statement furnished in accordance with Labor Code section 226; (b) Notice of all changes is provided in another writing required by law within seven days of the changes.

DLSE-NTE (rev 11/2014)